I represent the appellant, Mr. Carlos Hall. I'd like to reserve three minutes for rebuttal. I'll attempt to do so. This case is fundamentally about the proper application of Rule 56 and when it's appropriate to resolve contested facts on summary judgment. The district court didn't make really controversial legal rulings. Instead, it simply found no material dispute of relevant facts sufficient to grant summary judgment. On our opening brief, I don't believe we advanced a lot of controversial legal arguments. Instead, we took issue and we believe identified a number of key record disputes as to both Mr. Hall's ADA claim and his Eighth Amendment claim. With a couple of exceptions, defendants answering brief, I believe this is a fair characterization, didn't take a lot of issue with our legal argumentation. But instead, again, with our characterization of the record. So I think the key question here is, giving Mr. Hall the inferences that he's owed, resolving dispute of facts in his favor, has he entitled himself to a trial on an ADA violation? Which we think the answer to that is pretty clearly yes, that he's established a pretty egregious ADA violation as well as an Eighth Amendment violation against Sheriff Higgins. Counsel, let's start with the ADA claim with regarding to access to a toilet facility. What does the record show about the defendant's awareness of Mr. Hall's need for a toilet and his ability to access that? I think their argument is, well, he was using an ostomy bag and diapers, therefore he didn't need it. Yes, Your Honor. I would, perhaps making a pedantic distinction, I would describe the program service or activity required by the ADA as toileting. It's certainly true that he's incontinent. So he doesn't use a toilet to go to the bathroom. He uses a toilet as a platform by which he can clean his soil diapers. What he had obtained, what he testified that he had obtained in his past days in the jail and what he requested here in this jail was some sort of opportunity to clean himself so that he did not sit in his own filth, which he testified that he did. As to defendant's awareness of it, Dr. Tilly, who is the head medical provider, testified that there were multiple examples in the record of his own medical records, which is to say his own testimony is evidence, too, of course. But in the medical records of nurses finding him in soiled clothing. And there would be more if it weren't for the case that Mr. Hall testified that he was mostly able to change his diapers by paying other incarcerated people to change his diapers for him. Now, defendants, we would certainly argue that that's a denial of meaningful access to toileting. So just for an example, in one of the Supreme Court cases on Title II of the ADA, Tennessee v. Payne, it was about denial of courthouse services. And people with mobility issues were carried up by people who were with them up to the second floor of a courthouse. Nobody suggested that that was a meaningful accommodation. Nobody would suggest that in a public library they don't have to build a ramp because you could pay somebody else to carry you. Because the Title II of the ADA is a broad remedial statute meant to eliminate disability discrimination. And that includes not submitting disabled people to humiliating ordeals to access the same services as everybody else. And if you had to choose between being carried up a flight of stairs and having to compensate your fellow incarcerated people to change your diapers and clean yourself, he testified it was the most humiliating thing that ever happened to him, that he was contemplating suicide as a result. So we would say that's a denial of meaningful access. I want to dig down a little bit deeper. Those are kind of the general legal principles. But here, it's my understanding he did have access to a handicapped accessible toilet during part of the detention, but not in other parts. And so I need to know, in order for him to have been denied services on account of his disability, there at least needs to be an awareness of the problem. And I believe there was a complaint made on May 5th. But dig down into what did the defendant know and when did they know it? Right. So I would say it's different for the different program services or activities. I would say I think it's not only contested but uncontested that they knew that he could not change himself. I don't think there's any evidence in the record suggesting that they helped him to change himself. I think, in fact, we have testimony from Dr. Tilley saying it's not our job. It's not our job to change people. This isn't a nursing home. So the idea that he needed help, especially when he was on for his second stay, when he was in the W unit, because he was in the U unit. Then he went to the hospital because of his catheter infection. He comes back, has a longer stay in the W unit. This is an open dorm. He's not in an individual cell somewhere in a corner. The defendants are coming to change his catheter bag daily or every other day. As defendants note, he's being regularly seen by medical providers. It's in his medical records that he's sitting in soiled clothing. So we think there's, as far as their own awareness, and that's both, as Your Honor points out, that's the need for an accommodation, and it also goes to deliberate indifference. That, yes, they need to be on notice. Were they on notice of the toileting needs? Yes. It's uncontested that he couldn't change himself. They provided him diapers. They refused to help him change the diapers. He showed up in soiled clothing. He's compensating other incarcerated people to change him in an open dormitory where staff can see everything that's going on. So we think at least a contested fact about whether defendants are on notice is clear. And we can go through the other program services or activities, too, if you'd like. We think the same is true for showering, the same is true for bed transfer, and the same is true for medical care. Along those lines, I think this is kind of a similar question. Under the ADA, number one, is he required to request accommodations? And if so, what's the evidence in the program areas that he actually requested accommodations? Yes. So either he needs to request an accommodation or the need for an accommodation needs to be obvious. Here, the need for an accommodation is beyond obvious. He comes in, he's a paraplegic, he can't change himself, he's 350 pounds, he can't transfer from his bed to his wheelchair, he files a large number of grievances throughout his stay, the very purpose of which, of course, is to put the jail on notice. He files grievances as to the showering, for example. Counsel, I don't believe showering was raised in the district court. Is that true? It was raised, although not under the heading of the ADA. It was raised and addressed by the district court under the Eighth Amendment analysis. We think that the district court briefing on both sides, I would suggest, is not exactly a model of clarity. But what we have here is, and defendants argue waiver on two points that are kind of inversions of each other. So they argue that, well, showering was really considered as an Eighth Amendment violation. Let me ask you a point of clarification about that. Wasn't he a pretrial detainee? And if so, was he in that status during the entire time? And so aren't we really under the Fourteenth Amendment rather than the Eighth Amendment? That's an interesting question, Your Honor, and I don't know the answer. In the Eighth Circuit, except in the context of excessive force because of the Supreme Court's case of Kingsley v. Hendrickson, it is analyzed under the identical standard. So I don't think it would matter for purposes of legal analysis, but that might be an incorrect premise. Was he in pretrial status the entire time? That may very well be true. I actually don't know that offhand. I imagine my opposing counsel would. Thank you. You spoke of grievances, and there are a number of grievances in the record. Some don't have anything to do with the concerns that you're raising here, some heart problems and other things. And you identified grievances for the showering. Are there also grievances regarding the failure to change his diapers, the failure to give him access to what you call toileting? Your Honor, I believe there are. I can go and pull the record and come back on rebuttal on that. But I would also say, of course, it is helpful that we have a number of written grievances. Just for an example on showering, the defendant argues that he was not denied a shower for his initial stay in the U Unit. There are some issues. The district court held that evidence was inadmissible, but the defendant renews that argument on appeal. However, we have contemporaneous grievances about him not being able to shower. We have contemporaneous grievances. The defendant argues there's no evidence that he had bed sores, which gets into the Eighth Amendment medical care claim. We think there's actually quite a bit of evidence that he had bed sores, but we also have contemporaneous grievances saying, I have severe bed sores, I need help. So it is helpful to have that information in writing at the time, formally submitted to a policymaker at the jail. However, that's not the only and typically not the main way that people with disabilities note their need for an accommodation. It's often done more informally. And he testified in quite great detail about the various ways that he alerted defendants about his need for all of these accommodations. Because it seems like, for example, with the toileting, that he could do it sometimes, couldn't do it others. And so what you're suggesting is, is there testimony in the record that he would verbally tell folks, this is what I need? Yes, I believe there is. A defendant can obviously contest that, and I'll try to pull this on rebuttal with a more specific citation. It's also true, again, this goes to either the request for an accommodation or the obviousness for an accommodation. He testified that he was in an open dorm, unable to get out of his bed, sitting in soiled diapers, that he was mocked by various other incarcerated people for the stink. So we would argue that that goes to the obviousness of accommodation. And it's sort of a parallel analysis with deliberate indifference, where not in the constitutional context, but in the ADA context, when you're bringing damages, a defendant needs to be on notice and then disregard that notice. Was his evidence also that he relied on other inmates to get him in and out of his bed? Yes. So, for example, some of his medical appointments that he missed, he missed because he had run out of money on his commissary. He was no longer able to compensate incarcerated people, and therefore he could not get out of his bed. And as Dr. Tilley testified, it's not our job to change diapers. This isn't a nursing home. It's not our job to roll people over so that they don't get pressure sores. It's not our job to go help people in and out of their wheelchairs. So I would note that that not only goes to their knowledge and their disregard, that that also goes to the custom, official or unofficial, for Monell liability. But I'd like to reserve my time, please. Thank you. Very well. Thank you. Good morning. If it pleases the court, I'm Chris Stevens on behalf of Pulaski County Sheriff Eric Higgins. And I'll jump straight into the ADA claim. This court first had some questions about the toileting claim. First, I would note, as this court has already noted, that Mr. Hall had no need for an accessible toilet, or at least it wasn't apparent. He was incontinent. He used a catheter, an ostomy bag and diapers, and he doesn't dispute that. What he does claim is that he needed assistance cleaning after a bowel movement. But if Mr. Hall did need assistance, no jail employee knew about it, or at least there's no record of, and there's no evidence in the record of any jail employee knowing about it. What about his May 5th complaint? So, Your Honor, what I've noted is that he first grieved about this issue on May 10th. This was a month into his detention. He was there from April 11th to May 20th, I believe. He says he complained about this issue a lot outside of the grievances, but he clearly knew how to file grievances. He filed at least 10 grievances and 12 sick call forms. So if he needed assistance prior to May 10th with cleaning after a bowel movement, he didn't grieve about it. What about the position that counsel take? This is obvious. They knew him. The jail knew Mr. Hall, and I think he testified that when he'd been there before on the L unit, that a nurse had helped change his diaper, that there really wasn't any question that he was unable to do that on his own. I do think there was a question. So the records do show that on this detention that we're talking about in this case, Mr. Hall was found by a nurse to have soiled diapers or soiled clothing and was given assistance at that time to change. But there's no other notes in the record. So I guess what I'm saying is we know this is something that the turnkey medical team documented. When they found him with soiled clothing, this is something that they noted in the records, and yet there is nothing else in the record about Mr. Hall having soiled clothing. And I would also note that Mr. Hall was seen by medical every day for pill call. He was assessed for various medical issues nearly every day and sometimes twice a day, and yet in the record there's no indication of Mr. Hall making other complaints about needing assistance. Is that, and I appreciate what you're saying, but he is testifying that he had this problem. He was unable to do it, that it was obvious, and maybe he told some folks. We're at summary judgment. Are you asking us to view the facts sort of more in the light most favorable to your client than Mr. Hall? No, but I would ask the court to consider what the evidence is. And so his testimony that comes from his deposition after his detention is that he did make his need for an accommodation in this area, this toileting area, obvious. He says he complained about it to nurses and guards. He doesn't say when he made these complaints. He doesn't say what the substance of the complaints were, and he doesn't identify any guards or nurses that he interacted with. He says he just doesn't know. Along those lines, can I interject as you continue to answer that question? The district court discounted Hall's deposition as self-serving. Can he do that and still do it in the light most favorable to the non-movement? Your Honor, I think this court does have case law that indicates that where no reasonable juror could reach a finding for the plaintiff, there's not a real material dispute of facts. I mean, yes, he's disputing all these facts, and I would agree with Appellant's counsel that there's not really legal issues here. It's more he's disputing that the factual record wasn't appropriate for a summary judgment ruling. But, you know, this court has held. Well, why is his testimony so inherently, I don't know, incredible maybe, that no reasonable juror could find that he's raised fact questions with his own testimony? I think, Your Honor, so if it was true that his need for an accommodation in this area was obvious or that he did request it, you would find something in the record showing that. But he's unable to identify a single nurse or a guard to whom it was obvious. He's unable to identify, or he did not identify, again, when he made the complaints or what the substance of those complaints were. But I also would say, if we go back to the grievance he did file on May 10th that mentions he's having bowel movements and complained about that, that grievance was addressed. So on May 14th, he filed three, I think, three different grievances all within a short period of time, one on May 10th, one on May 12th, another one prior to May 14th. But on May 14th, Sergeant Musaddiq meets with Mr. Hall in Mr. Hall's unit, takes him to the shower there, and this is in the W unit at the time, and shows Mr. Hall that Mr. Hall demonstrates the shower chair for disabled inmates that's in there already isn't sufficient for him. He replaces it with an adjustable chair that allows him to more easily shower. And the report that Sergeant Musaddiq reports back on the grievance, it states that he watched as Mr. Hall tried it out and Mr. Hall stated that it worked well. And he says, if you have any problems with showering or just daily tasks, please let the deputy know so medical can be identified and they will assist you. And Sergeant Musaddiq, quote, Inmate Hall was satisfied with the change. Mr. Hall filed no other grievances after May 14th, suggesting that he was satisfied with the accommodation that was given him. Counsel, I'd like to spend a little bit of time on a third element of the ADA claim. Let's suppose that the facts taken in the light most favorable to Mr. Hall show that he was disabled and that he was denied an accommodation for toileting. What more would he need to show that this denial was by reason of his disability? I'm sorry, could you repeat that? Well, I think the third element is that if you're denied an accommodation, you have to show that it's by reason of the disability. What more would he need to show if it was obvious that he needed the accommodation and it wasn't being provided? Well, I don't know. Your Honor, on our brief, we focused just on the lack of evidence that any, I guess, Pulaski County employees knew about his need for an accommodation in this area. There just wasn't evidence of that in the record. Are you asking whether he, whether the, about the deliberate indifference standard? No, just that I'm trying to understand, I guess, what would have to be shown to prove that third element, that the denial of the accommodation was by reason of the disability if it was obvious that he needed the accommodation and he was not able to complete toileting services without the accommodation. Yeah, I think in certain instances, an accommodation might be overly burdensome or it might be not feasible. I don't know if that's, that wasn't argued in our brief and so we didn't address it. So the other ADA claims, there's showering. You know, the record, first of all, as this Court has already noted, he didn't raise that claim under the ADA below. This Court doesn't normally consider issues which the District Court didn't rule on. But he did have access to accessible showers at all times during his detention. We submitted with our initial summary judgment motion an affidavit from Lieutenant R. Vetti, who's the Director of Housing there in the jail, stating that the showers in both U units and W units, where Mr. Hall was housed, had accessible showers. On May 12th, Mr. Hall submitted a grievance after he fell in the shower. I discussed that earlier. He was accommodated with an adjustable shower chair. He does also, he raised in his response to the summary judgment motion, this issue that there was perhaps a lip in one of the showers. You know, that was the first time this had come up. When it did, we asked Lieutenant R. Vetti to check the showers, confirm whether there was a lip. He took pictures. There's, you know, there wasn't a lip there. But I think more importantly for where we are in this appeal, there's no evidence that any jail employees knew about Mr. Hall's concern with a lip during his detention. With respect to Mr. Hall's betting claim, he never complained about this issue during his detention either. There's no evidence that the jail knew of a need for an accommodation such as grab bars. We cited in our brief and in our pleadings below the ADA design standards for jails. They don't require grab bars. And, you know, some people, even some disabled individuals just don't need grab bars to transfer. So without a complaint or a request from Mr. Hall, it was reasonable to believe that Mr. Hall did not need an accommodation for transferring. Finally, the medical care claim. He claims, Mr. Hall claims he missed two mental health appointments because of his disability, one on April 27th and one on April 30th. There's just not, no evidence suggesting or clearly stating that the reasons why he missed those appointments were because of his disability. You know, he got medical care almost every day. He was in the jail sometimes multiple times a day. And I would note that his medical records are full of instances in which he refused medical care or acted against medical advice. Additionally, I would also say that there's nothing in the record that shows that Pulaski County Jail knew that Mr. Hall needed an accommodation to get medical care. Okay, so the Eighth Amendment claims under the 1983. Similar standard, deliberate indifference. And I've already discussed toileting, showering, medical care. And so I think that I'll move on to his deliberate indifference for denial of adequate medical care. Yeah, there's two issues here. There's pressure stores and his catheter. Mr. Hall was assessed for his pressure sores on multiple occasions, both in the jail and at his two different hospitalizations at UAMS. And he was even seen two days before his detention at UAMS as well and assessed. There's no evidence he ever had pressure sores in any of the records. The first pressure sores that he's diagnosed with appear in August, which is over two months after his detention in 2019. With respect to the catheter, the records show that Turnkey staff in the jail were aware of his catheter issues, leaking catheter and infections, and they treated him for it. He was treated the day after his admission into jail. On April 12th, he reported a catheter leakage. Turnkey assessed him and they noted no redness at the catheter site. Three days later, on April 15th, this is four days after he's booked into the jail, the Turnkey nurse notes a potential infection with regard to the catheter and he is then transported to UAMS where he gets treated. Then there's other instances in the record. This is an official capacity claim. There's not an individual capacity claim in this case. Even if he was able to show an underlying substantive constitutional violation by an individual, which he has not named or identified or done, his official capacity claim would require him to present official policy or a custom or widespread practice. All he has with respect to his medical care are his individual medical treatment that he received in the jail. Your Honor, that's all I have. Thank you for your time. Thank you, Mr. Stephens. Mr. Weiss, rebuttal. Thank you, Your Honor. I'd just like to briefly address Judge Grass's question about the by reason of disability. That's essentially a causation requirement. Normally, sometimes an ADA claim is an intentional discrimination claim and it looks a lot like a race, gender discrimination claim where the causation issue is really important. The failure to accommodate claim, which is kind of an inversion of a classical discrimination claim in the sense that it's not alleging that you were treated differently. It's alleging that you were treated the same. It's almost subsumed in the reasonable accommodation aspect. Technically, there's still a causation requirement. Your Honor, the case law is not very clear on that one. Yeah, I think that that's true, but I think in part because in the reasonable accommodation context, by reason of disability is not doing a lot of work. If you read it literally as a stronger causation requirement, it would undo the very concept of a reasonable accommodation claim, which is that people are being treated the same despite having a disability as opposed to being treated differently. We think that that's clear here. I just wanted to note quickly on the bed sores point that on our reply brief on 20 and 21, we explain he was never actually examined for bed sores. There's a fair amount of evidence suggesting that he did have bed sores. There's no conclusive evidence suggesting that he was ever demonstrated and shows that he didn't. I only have a few moments, so I'd be happy to answer any questions or I could get into some representations. One quick question on the practice or policy custom. Is there other evidence other than what you mentioned in your main argument about the jailer who says, it's basically not my job to do X, Y, and Z? Is there anything else on a custom policy? Yes. I think on the custom or unofficial practice, we have to go sort of 8th Amendment issue by 8th Amendment issue. So yes, on the pressure sores issue, I think there's your custom. You have the head of medical care saying, we don't turn people, it's not our job. We also have UAMS records that say that you have to turn people. Because he's paralegic, he can't turn himself. Dr. Tilly said this isn't a nursing home. He's exactly like somebody in a nursing home. This is how pressure sores develop. People need to be turned if they cannot move themselves. He also requested, he has a specialized wheelchair that helps him not have pressure sores. They denied him that as a matter of policy, not as some sort of bad apple situation. So that goes to the pressure sores. On the catheter, he says that he alerted them every day that he was having catheter issues and that it was ignored. So this wasn't a, you know, his catheter was being emptied. His catheter bag, I should say, was being emptied every day or every other day. Every day he complained about it. He complained, you know, he's booked on the 11th, he comes in, he complains on the 12th, he complains on the 13th. On the 15th, he's rushed to the hospital where he spent three days because it's infected. He spends three days there, comes back, immediately starts filing grievances again about his catheter. So this isn't one mistake. Again, the very purpose of the grievance policy is to put policymakers and supervisors on notice. And he is using the grievance when it comes to the catheter. And then the final Eighth Amendment claim on conditions, again, with issues like the bed transfer. And I'll just note quickly on deliberate indifference. I see I'm out of time and I'll stop when I'm done finishing a question. On deliberate indifference, he took three hard falls. The first time transferring from his bed to his chair, the third time in the shower chair. So defendants' argument that how could he have known, and he required medical treatment after each time, so how could they have known that he couldn't get back and forth because he's 350 pounds and he's seriously paraplegic and he fell really hard, including on his first day in the jail. That's how they could have known. But on the bed transfer, again, we have testimony from Dr. Tilley saying it is just, this isn't a nursing home. It's not our job to transfer people. He was moved from the individual cell on the W unit. Pardon me, I flipped that. The U unit to the W unit, specifically so that if he fell, there would be somebody to help. They knew this was risk. This was custom all the way down. Thank you, Mr. Weiss. Thank you very much, Your Honors. Court appreciates your appearance today and argument that case is submitted and we will issue an opinion in due course.